## Scanlon *v.* Pittsburgh Railways Company, Appellant.

Argued October 16, 1935. Before Frazer, C. J., Kephart, Schaffer, Maxey, Drew, Linn and Barnes, JJ.

478

*D. H. McConnell,* with him *J. R. McNary,* for appellant.

*Henry X. O'Brien,* with him *Thos. M. Marshall, Jr.,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, November 25, 1935:

This is a personal injury case in which the negligence of defendant is admitted. Plaintiff was a passenger on one of appellant's trolley cars which collided with another causing the injuries for which damages are claimed.

The question at issue is the validity of a release which plaintiff admits she signed, but which she claims not to have understood because of her nervous state and the foggy and confused condition of her mind following the accident. The consideration for the release was $75 paid to her in cash by a representative of the defendant at the time she executed it. In the release there was recited an assumed liability by defendant of a hospital bill not to exceed $45 and the payment of $30 to plaintiff's physician, who at that time had not seen her. When appellee signed the release, she signed also a statement written by the company's representative in pursuance of what she told him, giving in some detail the circumstances of the accident.

The collision between the cars took place shortly before one o'clock in the afternoon. Plaintiff was rendered unconscious by the collision and was taken to a hospital, where she was X-rayed and given treatment in the form of sedatives. About five o'clock she was taken to her home by automobile, the driver being employed at the same place she was. He testified that at that time she was very nervous and excited, mumbled and talked at random, that he could not carry on an intelligent conversation with her. When she reached home she was put to bed, where she remained until about seven o'clock. Owing to the heat, her mother removed her to the porch of their residence; where she reclined in a porch swing. A few minutes after she reached the porch, the representative of defendant called upon her, learned from her the particulars of the accident, wrote them down in the statement which she signed, procured her signature to the release and left with her the cash consideration named in it, $75. She testified that she understood from him that this was in payment for her clothing and that the release was a receipt for this payment. Her mother signed the release as a witness, but did not read it, and likewise testified as to her understanding of the payment. Several witnesses, who saw plaintiff shortly after the release was executed, said she was in a highly nervous state and was greatly disturbed mentally. Her physician, Dr. McCahill, visited her about nine o'clock in the evening. He testified that she was very much upset, very nervous and not at all mentally normal, that she did not know what she was talking about when he saw her, that she was not in any condition to transact business then, or for several hours before, that she would not have been able to read a paper, that she was mentally foggy and not competent to discuss her injuries.

The plaintiff tendered back to the defendant the $75 which she had received, but did not tender the $30 which had been paid by defendant direct to her doctor.

This is a close case, particularly so in view of the statement about the accident which appellee made and signed, but after full consideration of the evidence which we have outlined, especially that of her physician, we are not prepared to say that the court was in error in submitting to the jury the question of the validity of the release. The trial judge had preliminarily determined, as the law required him to, that the testimony which he had heard to invalidate the release was clear, precise and indubitable. We have had occasion to review the question of the validity of releases and the principles applicable when it is sought to set them aside in several quite recent cases, among them Vogel v. Taub, 316 Pa. 41, Keys v. Hanscom Bros., Inc., 288 Pa. 389, and Walker v. Harbison et al., 283 Pa. 111. We have also reviewed the authorities on the clear, precise and indubitable evidence rule in Broida v. Travelers Ins. Co., 316 Pa. 444. We think it is not necessary to restate what we have already announced.

It is urged upon us that the plaintiff cannot set aside the release without having tendered the $30 which was paid to her physician, Dr. McCahill. This payment was made direct to him by defendant, and plaintiff, who did not have a copy of the release and apparently had never seen it after she signed it, up to the time of the trial, testified in substance that she did not know that the payment had been made to the doctor. Under the circumstances, we think it was not incumbent upon her to offer to return the $30.

The judgment is affirmed.