## Pirrung et ux. v. Weisbrod, etc.

*Nochem S. Winnet*, for plaintiffs.
*Charles E. Kenworthey*, for defendant.

ALESSANDRONI, J., July 26, 1940.—This action in trespass is brought against the owner of a beauty parlor for damages sustained by the wife plaintiff through the negligence of an employe of defendant in applying eyelash dye to her eyelashes. The trial resulted in a verdict for plaintiffs, whereupon defendant has filed these motions for judgment n. o. v. and for a new trial.

The primary issue involves the validity of a release executed by the wife plaintiff. The testimony discloses that she was injured on June 13, 1935, when as a result of the application of the dye she suffered a severe infection of the eyes. Defendant on the next day took her to an eye specialist who diagnosed her condition as poisoning of the conjunctiva and the cornea. As a result of the infection her eyes were markedly swollen, she was unable to see and suffered severe pain, dizziness, nausea, and extreme nervousness. The physician ordered her to bed and prescribed sedatives. Defendant took the wife plaintiff home and stated that he would obtain a nurse for her assistance. Thereafter he introduced into her home his sister-in-law who purported to act as her nurse, though in fact she was not qualified. For the next few days defendant took her to the eye specialist daily and returned her to her home. On June 18th, by reason of the intense pain suffered by the wife plaintiff, the doctor prescribed morphine as an opiate. On June 19th the wife plaintiff was unable to see and was in a semi-comatose condition by reason of the drugs which had been administered.

Unable to support herself in a sitting position, she was assisted by the nurse and by defendant in signing a document which defendant told her was a receipt for $25 which he was giving to her as a partial payment in defraying the expenses. He also told her that he was going to pay the eye specialist the sum of $25. The alleged receipt was in fact a complete release of all liability. It was witnessed by the nurse and by the wife plaintiff's mother who was called into the room after the execution.

Two days later an attempt of defendant and his counsel to obtain a release for the manufacturer of the eyelash dye from both the wife plaintiff and her husband proved unsuccessful. The following day without notice the nurse, so called, was withdrawn from service and defendant paid no attention to the injured party thereafter, although her loss of sight continued for many weeks. She was obliged later to visit her physician for almost two months.

There was no error by the trial judge in submitting the question of fraud in the execution of the release to the jury, and his decision that the facts relied upon had been proven beyond a reasonable doubt by evidence which was clear, precise and indubitable was correct: Ralston et ux. v. P. R. T. Co. (No. 1), 267 Pa. 257; Broida, to use, v. Travelers Ins. Co., 316 Pa. 444.

Defendant contends, however, that the wife plaintiff's failure to return or tender the $25 paid to her precludes any attempt to set aside the alleged release on the ground of fraud. It is clear that the $25 paid to her physician which is not included in the release need not be considered: Scanlon v. Pittsburgh Rys. Co., 319 Pa. 477, 480. The status of the decided cases on the question of the return of funds received as consideration for a release executed by fraud is not satisfactory. In the case of Gordon v. Great Atlantic & Pacific Tea Co., 243 Pa. 330, 335, it was decided that, where an alleged release was fraudulently secured, the fact that the money paid at the time of its execution had not been returned was not suffi-

cient to bar the right of recovery, and the injured party might institute his action without payment or tender thereof since the money was retained not as part of the consideration of the contract whose execution was denied, but as partial indemnity for the fraud perpetrated upon him. Since the injured person was deceived into accepting it by fraud there is no admission that it was consideration for a contract and consequently there is no obligation upon him to return it. See also cases cited therein from other jurisdictions.

This decision was followed in the case of Vanormer v. Osborne Machine Co., 255 Pa. 47, in which the injured person was paid the substantial sum of $1,150 as consideration for the release which was found to have been fraudulently obtained. The court, of course, required the amount paid to be credited upon the judgment but held that the release, being obtained by fraud, did not prevent the institution of suit and the recovery of a verdict even though the sums received thereunder had not been tendered. This principle was also affirmed in the decision in the case of Hogarth v. Wm. H. Grundy & Co., 256 Pa. 451.

In a similar case, however, it was held that the retention of the benefits after knowledge of the fraud constituted a waiver of the fraud and a ratification of the contract: Walker v. Harbison et al., 283 Pa. 111. The court did not expressly overrule the cases cited above and, furthermore, rested its decision upon the holding of the court in the case of Corporation Funding & Finance Co., Inc., v. Stoffregen, 264 Pa. 215. That case was substantially distinguishable since it involved an action against a subscriber of stock of an insolvent corporation to recover the amount of the subscription who defended on the ground that the subscription was procured by fraud, although he had remained silent after discovery of the fraud and retained not only the certificates of stock but also several hundred dollars in dividends paid thereon. The case of Walker v. Harbison et al.,

supra, is also cited in the decision in the case of Keys, Administratrix, v. Hanscom Brother's, Inc., 288 Pa. 389, and more recently in the case of Scanlon v. Pittsburgh Rys., supra.

It appears to this court that tender or the absence of it, alone, cannot be the determining factor in every case. The law does not tolerate such harshness, nor approve of such rigidity and inflexibility. The resulting inequity must be apparent upon consideration of a case such as is now before us. In fact, tender or repayment or the absence thereof is an element which is properly considered in determining whether fraud has been committed in securing the release. It is an important consideration in the formulation of the conclusion as to whether the injured person accepted the amount paid as settlement for his claim and thereafter became dissatisfied, or whether she had been the victim of unfair practices. The amount paid in relation to the injuries sustained, the time, and the circumstances under which it was paid lead inescapably to the conclusion in this case that the wife plaintiff had been the victim of a conspiracy of defendant and his associates. Furthermore, it would be unreasonable to expect one in the position of the wife plaintiff to even consider the receipt of such an insignificant sum or to be concerned about its repayment.

We are inclined, therefore, to follow the line of decisions which view the funds retained not as part of the consideration of a contract which plaintiff denies she ever executed, but as partial indemnity for the fraud perpetrated upon her, which reasoning accords with the realities of the case.

The case was submitted to the jury upon a single theory, namely, that in applying the dye the employe of defendant failed to follow an established custom among operators of beauty parlors in Philadelphia to employ the dermatitis or patch test before applying the dye. The jury found that there was such a custom existing in the City of Philadelphia on June 13, 1935, and that

defendant's employe had failed to follow it. Defendant contends that the witness called by plaintiff to establish the custom did not possess adequate knowledge. This witness was a beauty culturist who had been engaged in the practice for a period of 14 years, during ten years of which she was employed as a teacher, specializing in the application of dyes, in one of the large schools of Philadelphia. She was a member of an association of beauty culturists in Philadelphia for a period of 12 years and attended their regular monthly meetings at which lectures and demonstrations were given. She was also a member of the National association and attended . their annual convention at which demonstrations were given by the leading manufacturers. Approximately three hundred students were taught by her each year and many of them were subsequently employed in establishments in the City of Philadelphia. These returned and discussed the practice with her. She testified that she could name offhand 15 specific shops in which the custom was followed and many more upon further study. We think it immaterial that the witness did not have any experience with the particular dye used in this case, for she possessed adequate knowledge as well as the opportunity to observe the practices in beauty parlors in Philadelphia. The existence of a custom in any particular trade is a fact which may be stated by one who possesses adequate knowledge, even though not possessed of any special skill, and it is permissible to base the statement in part upon information furnished by others: 22 C. J. 550.

Defendant also contends that there was no evidence of negligence under the decision in the case of Remley v. Plummer et al., 79 Pa. Superior Ct. 117. The decision in that case involved the method of applying anesthesia and it was held that where the medical profession is divided as to method a surgeon is not responsible in following a method which he deems preferable and which is accepted by the majority of physicians. That was not the issue in

the present case. Although the witnesses of defendant testified that there was no custom existing in Philadelphia such as described by plaintiff's witness, the issue submitted to the jury was not one of differences in method but whether or not a custom did or did not exist in this particular trade.

For the foregoing reasons, therefore, we believe that defendant's motions for judgment non obstante veredicto and new trial must be dismissed.

And now, to wit, July 26, 1940, the motions for judgment non obstante veredicto and new trial are dismissed.