## Jenkins v. Peoples Cab Company et al., Appellants.

Argued April 11, 1966. Before ERVIN, P. J., WRIGHT, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ. (WATKINS, J., absent).

*Raymond F. Keisling,* with him *Clem R. Kyle,* for appellants.

No argument was made nor brief submitted for appellee.

OPINION BY HOFFMAN, J., supporting the affirmance:

On January 31, 1963, Ruth Jenkins was injured while being transported by cab to her home in Pittsburgh. In January 1964 she filed a complaint in trespass. After trial the jury returned a verdict in her favor for $2442.25 against the driver of the cab, John Johnson, and the owner, Peoples Cab Company.

The court then reconvened to determine whether a release signed by plaintiff barred recovery. Plaintiff admitted that she had executed the release at which time she received $20.00. She contended, however, that the release was secured through fraud and misrepresentation by an agent of the company while she was in an enfeebled physical and mental condition. The jury found the release invalid. In this appeal defend-

ants challenge only the determination by the jury that the release is invalid.

Defendants first contend that plaintiff's evidence was insufficient to support the setting aside of the release. The rule is well established that to overturn a written instrument the evidence in proof thereof must be clear, precise and indubitable. *Nocito v. Lannuitti,* 402 Pa. 288, 167 A. 2d 262 (1961). Every such case, however, must stand on its own facts.

The Supreme Court of Pennsylvania has often recognized that many factors must be considered in determining whether a plaintiff had an intelligent understanding or whether she may have been deceived as to the contents of the documents which she signed. Among these factors are the physical and mental condition of the plaintiff, the circumstances in which the release was obtained, the amount paid on the release, and how soon after the accident the release was given.[1] See *Hogarth v. William H. Grundy & Company,* 256 Pa. 451, 100 A. 1001 (1917); *Gordon v. Great Atlantic & Pacific Tea Company,* 243 Pa. 330, 90 A. 78 (1914); *Spritzer v. Pennsylvania Railroad Company,* 226 Pa. 166, 75 A. 256 (1910); cf. *Scanlon v. Pittsburgh Railways Company,* 319 Pa. 477, 181 A. 565 (1935); *Sheppard v. Frank & Seder, Inc.,* 307 Pa. 372, 161 A. 304 (1932).

The accident in the instant case occurred at 1:30 p.m. On the following morning, at about 10:00 de-

---

[1] In *Cady v. Mitchell,* 208 Pa. Superior Ct. 16, 220 A. 2d 373 (1966), filed today, we similarly noted that, "This settlement was made nine days after the accident when the plaintiffs were concerned with the injuries to their children and in securing medical attention for them. The first contact by appellant's adjuster had been made immediately after the accident when wife-plaintiff was still suffering from nervous reaction which normally follows an accident of this nature."

fendants' representative appeared at plaintiff's home as she was leaving for a 10:15 appointment with her doctor. Plaintiff testified that at that time she had pains in her back, a severe headache and that her eyes hurt. She testified further that the representative did not explain to her that the document which she signed was a release of the cab company's liability. She was told, rather, that it was a release which would allow the cab driver to return to work, and that the $20.00 payment was to be used by her for cab fare. She stated that she had not been prevented from reading the release, but, apparently, had not read it because she felt sick.

Plaintiff's testimony relating to her condition was corroborated by her physician who examined her that very morning. He stated, "[She] presented herself at the office on the morning of February 1st with severe pain and limitation in the neck. She had tears in her eyes, nausea and vomiting and a severe headache. She was unable to move her neck in any direction—up or down or to the side. At the time, because of the severity of her illness, about all I could do was give her something for a sedative and the pain and send her home to rest."

Later in his testimony he stated, "[S]he was brought to the office by her family with the complaint of severe neck pain, headache, nausea and vomiting. She was unable to move her head in any normal direction. In fact, she held it quite still and any attempt of examination or to move her head caused her to cry out in pain because of the severity of the pain. I advised that she be returned immediately to her home, after sedating her and giving her an analgesic. Q. Could you state, at the time she visited you, she was under great tension as a result of her injury and pre-

existing condition? A. Yes, her objective appearance was that of a tearful, painful person with deformity of the head and neck." Such then was plaintiff's condition on the day following the accident when the release was procured.

The company's representative stated that he made no misrepresentations to the plaintiff, and that he came to the conclusion that there was no liability on the part of the driver or the company. When asked by defendants' attorney, "[C]ould you tell us why you arrived at the figure of Twenty ($20.00) Dollars?", he stated: "Well, there were no medical bills and actually, I paid her the $20.00 only to eliminate the possibility of further expense to the cab company and actually how—the usual demand statement amount of medical bills a lot of times—if she saw the doctor once, that is $5.00 and I gave her $20.00. I gave her the $20.00 more or less for good wills sake and the cab company is in business in the City and she would probably use the company again—she would be using us, so I gave her the sum for good will."

The representative's testimony that there were no medical bills was certainly suspect, however, since after securing the statement and release, he drove plaintiff to the doctor's office. If the doctor's testimony is to be believed, plaintiff's condition should have been readily apparent, whereas the representative testified that plaintiff appeared normal and under no distress at all. Moreover, the representative testified in answer to the following questions, "Q. Did you notice whether or not she was able to turn her neck? A. Yes, she was able to turn her neck. Q. Did she complain of any pain when she turned her head? A. No, she did not." This testimony was in direct conflict with that of the doctor who stated that she was unable to move her head in

any normal direction, and that any attempt to move her head caused her to cry out in pain. The jury certainly had reason to doubt the credibility of the representative in light of this testimony.

The release in this case is a complex legal document which is two and one half pages long in our printed record. It was secured by defendants' representative from plaintiff on the day following the accident, early in the morning, while plaintiff was in great pain and on the way to the doctor. Despite her apparent and serious injuries, plaintiff received only $20.00 for signing this release. Her testimony indicated that she had signed the release as a result of the representative's fraudulent misstatements. Moreover, her decision not to read this document but to rely on the representative's statements would not seem unreasonable in light of the pain in her head and eyes. The representative's credibility, on the other hand, as noted above, is suspect.

In light of all of these factors, including (1) the representative's activities in securing this release on the day following the accident while plaintiff was in great pain and on her way to the doctor, (2) plaintiff's testimony relating to the representative's misrepresentations, (3) the insignificant amount paid for the release, and (4) the apparent inconsistencies in the representative's testimony, we find that there was sufficient evidence from which a jury might reasonably infer that plaintiff did not understand that she was releasing defendants from further liability and was induced to sign the release through fraudulent misrepresentations.

Defendants contend, however, that the court erred in refusing to permit the introduction of a statement

signed by plaintiff which described the accident. They argue that this statement shows that plaintiff felt that she had no cause of action against defendants. With respect to questions involving the admissibility of evidence, the conclusion of the trial judge will not be interfered with on appeal save for manifest abuse of discretion. *Thompson v. American Steel & Wire Company*, 317 Pa. 7, 175 A. 541 (1934). Although evidence may be logically relevant, it may, nevertheless, be excluded if its effect on the trial would be to confuse the issue by distracting the attention of the jury from primary to collateral issues. *Thompson v. American Steel & Wire Company*, supra. In the present case admission of this statement would have resurrected the issue of liability which had already been decided by the jury. The probative force of this statement as it bears upon the issue of the validity of the release is slight when weighed against the undue confusion or prejudice which it might engender. We hold, therefore, that the exclusion of the statement by the trial judge did not constitute a manifest abuse of discretion.

Appellants finally contend that plaintiff's failure to return $20.00 received upon execution of the release constituted a waiver of the alleged fraud. In support of their contention, defendants cite *Nocito v. Lannuitti*, 402 Pa. 288, 167 A. 2d 262 (1961) ; *Walker v. Harbison*, 283 Pa. 111, 128 A. 732 (1925), and *Corporation Funding & Finance Co., Inc. v. Stoffregen*, 264 Pa. 215, 107 A. 727 (1919). These cases stand for the principle that the retention of benefits *after full knowledge of the fraud* constitutes a waiver. This principle is not applicable in the present case, however, since the record does not indicate that plaintiff discovered the fraud until after the litigation had commenced and the de-

138

fendants' answer alleged the release as a defense. Although plaintiff admitted telling her attorney that she signed certain documents on the morning after the accident, the evidence does not establish any knowledge on her part that the documents released the defendants from liability. In the absence of such knowledge, we conclude that there was no waiver.

Judgment affirmed.

WRIGHT, MONTGOMERY, and JACOBS, JJ., would grant a new trial.