**Betty Jane YOUNG**

v.

**ROBERTSHAW CONTROLS COMPANY et al.**

v.

**Jacob M. YOUNG, Jr., et al.**

**Civ. A. No. 75–2609.**

United States District Court, E. D. Pennsylvania.

May 2, 1977.

---

W. A. Atlee, Jr., Lancaster, Pa., for plaintiff.

Soren West, Lancaster, Pa., for J. M. Young.

John T. Quinn, Philadelphia, Pa., for Gibbles.

S. R. Zimmerman, Lancaster, Pa., for Burkholder.

Robert I. Cottom, Reading, Pa., for Nissley.

W. W.. Stainton, Lancaster, Pa., for Robertshaw & Rheem.

A. E. Saylor, Reading, Pa., for Texgas Corp.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

This is an action seeking damages for injuries resulting from an explosion of a hot-water heater in plaintiff's home in Lititz, Pennsylvania, on July 11, 1974. Plaintiff is a resident of Pennsylvania, while defendants Robertshaw Controls Company (Robertshaw), Rheem Manufacturing Company (Rheem) and Texgas Corporation (Texgas) are all incorporated in Delaware and have their principal places of business in Virginià, California and New York, respectively. The amount in controversy exceeds $10,000.00, so jurisdiction is based on 28 U.S.C. § 1332.

A summary of the pertinent factual allegations reveals that the plaintiff resided with her two sons, one of whom is third-party defendant Jacob Young, in one-half of an adjoining semi-detached residence which they rented from third-party defendants, Aaron and Anna Burkholder (the Burkholders). On the premises was a hot-water heater. The heater was manufactured by defendant Rheem and was equipped with an automatic 100 per cent shut-off control device manufactured by defendant Robertshaw. The heater was sold to the plaintiff by third-party defendant Gibble Brothers who installed the heater. Gas for the heater was supplied initially by third-party defendant Nissley Bottled Gas, Inc. (Nissley). In May of 1973, Nissley's business was sold to defendant Texgas, which began supplying gas to the plaintiff on June 18, 1973.

On July 11, 1974, plaintiff and Jacob Young returned home from work and found that there was no hot water in their home. They then discovered that the pilot light in the hot-water heater was not lit. Jacob lit a match to re-light the pilot light and the heater exploded, injuring both persons.

On February 14, 1975, Jacob Young signed a release. In return for $5,500.00 he agreed to release Robertshaw "and all other persons, firms, and corporations" from liability for the accident of July 11, 1974. Plaintiff has brought this action against the three defendants, and third-party complaints were subsequently filed against the third-party defendants.

Before this Court are the following motions: defendant Texgas' motion for summary judgment on the plaintiff's claim and all cross-claims; defendant Rheem's and defendant Robertshaw's motions for summary judgment on third-party defendant Jacob Young's claims and Jacob Young's counter-motion for summary judgment; third-party defendant Gibble Brothers' motion for summary judgment; and defendant Nissley's motion for summary judgment on all claims, including plaintiff's claim and Robertshaw's third-party claim.

## TEXGAS' MOTION FOR SUMMARY JUDGMENT

Plaintiff states in her pre-trial memorandum that her theory of liability for all three defendants is grounded in both negligence and products liability law. Texgas in its motion contends that it cannot be liable under either theory.

Regarding negligence, Texgas states that it was not involved when the hot-water heater was installed and the gas lines connected. Texgas' employee Robert Spinicci asserts in his affidavit the fact that Texgas did not deliver gas to plaintiff until June of 1973 and that Texgas "provided no appliances to the premises in question; did not perform any of the installation work for the L.P. gas cylinders; did not provide any connections from the L.P. gas cylinders to the appliances; never installed any appliances on the premises, and with the exception of one occasion to replace an oven valve, never performed any adjustments, inspection or corrective measures to the L.P. gas hot-water heater" in plaintiff's home. *Affidavit of Robert D. Spinicci*, p. 3, ¶ 11.

Another employee, Clayton McElhenny, a serviceman for Texgas, declared in his affidavit that he was never called to do any repairs on plaintiff's heater since Nissley was acquired by Texgas. He and a third employee, Donald Nissley, Jr., declare in their affidavits that they went to plaintiff's home after the accident and tested the gas system for leaks, but found none.

None of these facts are in any way contested by plaintiff or any other party. In fact, plaintiff did not file an answer or counter-memorandum in response to Texgas' motion.

Regarding the theory of strict liability, Texgas argues that there has been no allegation that the gas supplied to the heater was in any way defective. Restatement of Torts, 2d, § 402A provides in pertinent part:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical

harm thereby caused to the ultimate user or consumer, or to his property * * ". Clearly, there must be a defect in the product supplied by Texgas for liability to exist. Yet in her complaint, plaintiff charges that Texgas was culpable in "the service, maintenance, and supply of gas". Furthermore, the complaint alleges that Texgas supplied gas and service to the heater "knowing or having reason to know of its defective condition and without adequate notice or warning to the plaintiff of its defective condition." There is no mention of any defective condition in the gas itself.

F.R.C.P. 56(c) holds that:

" * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * * "

The Third Circuit recently declared in *Tomalewski v. State Farm Life Insurance Company*, 494 F.2d 882, 884 (3d Cir. 1974) that:

"The use and purpose of a motion for summary judgment is well stated in *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7 Cir. 1972), as follows: 'As a procedural matter, granting summary judgment, while a drastic remedy, is a wholesome one where applicable to the circumstances. It is never warranted except on a clear showing that no genuine issue as to any material fact remains for trial. * * * If the pleadings and proof in the form of depositions, affidavits and admissions on file disclose that no real cause of action or defense exists, the court may determine there is no issue to be tried and may grant a summary judgment.' * * * "

In the instant case, there are no disputed facts. The affidavits disclose that Texgas provided no service in the form of maintenance, installation or repair that could have been negligent. There is no allegation that the gas was defective. With no facts before us in dispute, we will grant Texgas' motion for summary judgment as to all claims against it.

## RHEEM'S AND ROBERTSHAW'S MOTIONS FOR SUMMARY JUDGMENT AS TO THE CLAIMS OF JACOB YOUNG AND YOUNG'S COUNTERMOTION

Defendants Rheem and Robertshaw have also moved for summary judgment, asserting the release signed by Young as a defense against all claims by him. Jacob Young moves for summary judgment declaring the release invalid on its face. He contends that the consideration was grossly inadequate for the extensive claims he was releasing, that the negotiator for Robertshaw took advantage of Jacob Young's innocence and ignorance on such matters and that Jacob Young was under great financial duress when he signed the release. As a consequence, he argues that the release covers items not within his contemplation when he signed it.

Pennsylvania law clearly holds that a signed release is binding unless executed through fraud, duress, accident or mutual mistake. *Three Rivers Motors Company v. Ford Motor Company*, 522 F.2d 885 (3d Cir. 1975). The intention of the parties governs the effect of the release, but this intention must be gathered from the language itself. *Frank v. Volkswagenwerk, A.G. of West Germany*, 382 F.Supp. 1394 (E.D.Pa.1974), *modified on appeal*, 522 F.2d 321 (3d Cir. 1975). The natural and ordinary meaning of this language will prevail unless one of the parties unequivocally proves fraud or mutual mistake. *Sears, Roebuck and Co. v. Jardel Co.*, 421 F.2d 1048 (3d Cir. 1970), *Frank v. Volkswagenwerk, A.G. of West Germany, supra*. A document is presumed to accurately express the state of mind of the signing parties if it is signed and the signature is accurate. *Dorenzo v. General Motors Corp.*, 334 F.Supp. 1155 (E.D.Pa.1971), *appeal dismissed*, 474 F.2d 1339 (3d Cir. 1973). The burden of proving the invalidity of an agreement is on the party asserting invalid-

ity. *Hohlweiler v. Pennsylvania R. Co.*, 294 F.Supp. 1377 (E.D.Pa.1969), *affirmed*, 436 F.2d 1382 (3d Cir. 1971), *cert. denied*, 404 U.S. 884, 92 S.Ct. 220, 30 L.Ed.2d 167 (1971).

▮ Young argues that Robertshaw induced him to sign the contract knowing the consideration he was to receive was less than he deserved. However, underestimation of damages is not in and of itself a ground for setting aside a release. *Dorenzo v. General Motors Corp., supra.* There are no accusations of actual fraud; in fact, Robertshaw's agent, Dennis McHugh, states in his affidavit that he told Young that this settlement would bar all future recourse.

▮ It is Young's contention that he had no awareness of the extent of his claim and, therefore, that it was not his intention to waive such a large claim. He cites cases in which releases have been voided. *Cady v. Mitchell*, 208 Pa.Super. 16, 220 A.2d 373 (1966) involved a plaintiff who signed a release with knowledge that her car was damaged but with no knowledge that she had been physically injured since no symptoms had yet arisen. *Restifo v. McDonald*, 426 Pa. 5, 230 A.2d 199 (1967) held that decedent's release did not bind his widow regarding her rights to contribution, because contribution is a post-trial right and had not arisen when the release was signed. *Cockroft v. Metropolitan Life Ins. Co.*, 125 Pa.Super. 293, 189 A. 687 (1937) involved a release in which the plaintiff-beneficiary never knew of her rights to double indemnity. *Bell Telephone Company v. Baltimore & O. R. Co.*, 155 Pa.Super. 286, 38 A.2d 732 (1944), held that a release applicable to shield a landowner from liability for accidental damage to plaintiff's conduits did not apply to damage resulting from landowner's construction of an underground storage tank. *Zurich General Accident and Liability Ins. Co. Ltd. v. Klein*, 181 Pa.Super. 48, 121 A.2d 893 (1956) held a release invalid when a purchaser of property was unaware of pre-existing tax liabilities. *Furtek v. West Deer Township*, 191 Pa.Super. 405, 156 A.2d 581 (1959) held that a release which applied to damages from a township's widening of a highway did not

apply to damages for water running off the highway and flooding plaintiff's property.

In all of these cases there is either a complete unawareness of a fact (*Cady, Cockroft, Zurich*) or a subsequent development not anticipated by a party (*Restifo, Bell Telephone, Furtek*). Neither of those situations is present in the instant case. Young knew he was seriously harmed, knew he was entitled to sue and knew he was giving up that right. The above cases in which releases were held invalid are, therefore, distinguishable.

So too is the case of *Jenkins v. Peoples' Cab Company et al.*, 208 Pa.Super. 131, 220 A.2d 669 (1966), in which the plaintiff was so disoriented with pain that she did not read what she was signing. Young was clearly not that disabled. *In re F. H. McGraw & Company*, 473 F.2d 465 (3d Cir. 1973), *cert. denied*, 414 U.S. 1022, 94 S.Ct. 443, 38 L.Ed.2d 312 (1973) is also inapposite because there the Court found the release to be ambiguous. No such ambiguity appears in the release in the case at bar.

*Dorenzo v. General Motors Corp., supra*, at 1157, very aptly described the situation before us, when it quoted *Bollinger v. Randall*, 184 Pa.Super. 644, 650–51, 135 A.2d 802, 805 (1957):

> " 'Underestimating damages or making a settlement before damages are accurately ascertained is not considered such a mutual mistake of fact as to relieve from a release of damages or settlement made by the parties. * * * "To hold otherwise would create a legal situation which would make it impossible, or at least inadvisable, to settle any suit. Settlements are necessarily based upon the facts which are then available to the parties and there is always the risk that the injuries may prove to be more serious or less serious than then contemplated, and there is also the disputed question of liability to be considered. If a release is to be lightly set aside for no other reason than the parties were mistaken as to the extent of the injuries, the effect of the release and the advantage of settlement would be lost. * * * " ' ".

We do not find sufficient reason to set the release aside. Accordingly, we will deny the motion for summary judgment by Jacob Young and grant the motion for summary judgment by defendants Robertshaw and Rheem against all claims by Young. The motions of all other parties joining this motion will also be granted.

### NISSLEY'S MOTION FOR SUMMARY JUDGMENT ON THE CLAIMS OF THE PLAINTIFF

■ Nissley moves for summary judgment on the claim of the plaintiff and on the third-party complaint of Robertshaw. Its argument is roughly similar to that of Texgas, that it did no maintenance or installation on the hot-water heater. This factual assertion is challenged, however. The depositions of Aaron Burkholder and Jacob Young suggest that Nissley did perform some maintenance and installation work. This evidence is insufficient to prove that Nissley is liable to the plaintiff or to a defendant on a third-party claim, but raises questions of fact which render summary judgment inappropriate.

Nissley's motion for summary judgment will accordingly be denied.

### GIBBLE BROTHERS' MOTION FOR SUMMARY JUDGMENT ON THE CLAIM OF ROBERTSHAW

■ Gibble Brothers moves for summary judgment, citing *Burbage v. Boiler Engineering & Supply Company, Inc.*, 433 Pa. 319, 249 A.2d 563 (1969), holding that the manufacturer of a component part is solely liable for its defects. However, *Burbage* did not involve summary judgment; it involved a jury verdict finding that the component was defectively made. No such finding here exists. Therefore, given a question of fact as to whether the component was defectively made or installed, summary judgment will be denied.