539 A.2d 826

Jane A. SOXMAN and John F. Buzzatto, her husband,

v.

James L. GOODGE, D.C., and D.L. Randour, D.C. each individually and trading and doing business as Randour's Chiropractic Clinic, a partnership Randour's Chiropractic Clinic and Daniel Vosel, D.C., an individual.

Appeal of James L. GOODGE, D.C. and D.L. Randour, D.C., each individually and trading as Randour's Chiropractic Clinic, a partnership Randour's Chiropractic Clinic.

Superior Court of Pennsylvania.

Argued Oct. 16, 1987.

Filed Feb. 16, 1988.

Reargument Denied April 12, 1988.

344

John W. Jordan, IV, Pittsburgh, for appellants.

Keithley D. Mulvihill, Pittsburgh, for appellees.

Before BROSKY, DEL SOLE and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from the order of the lower court granting in part and denying in part appellants' motion for leave to file an amended answer. Appellants contend that the lower court erred in concluding that the execution of releases by appellees did not present a viable defense for appellants. For the reasons that follow, we affirm the order of the trial court.

From August 1983 to April 1984, appellee Jane Soxman was treated for cochlear hydrops, a condition of the inner ear, at appellant Randour Chiropractic Clinic. Having developed back problems, Soxman discontinued chiropractic treatment in April 1984 and began treatment by a medical doctor. In June 1984, Soxman obtained her X-rays from Randour Clinic. In exchange, Soxman was required to execute the following release:

## GENERAL RELEASE

Date June 22, 1984

Carnegie, PA

(City and State)

KNOW ALL MEN BY THESE PRESENTS: That I, Jane Soxman have requested the release of X-rays which are a part of the office records of James L. Goodge, III, D.C., relating to my case, and I hereby acknowledge receipt of these X-ray films. In consideration of the foregoing, I hereby release and forever discharge the aforesaid James L. Goodge, III, D.C., from any and all responsibility or liability of any kind, nature or character whatsoever from the beginning of the world to this day. This transaction is consummated at my specific request.

/s/ James L. Goodge III, D.C.

(Witness)

/s/ Louise Durkolski

(Witness)

/s/ Jane A. Soxman, D.D.S.

(Patient)

On January 28, 1985, appellee John Buzzatto executed a similar release for the relinquishment of X-rays of his wife, appellee Jane Soxman.

█ In August 1985, appellees filed suit against appellants seeking damages for malpractice. Appellants filed an answer on December 10, 1985. Appellants subsequently retained new counsel and filed a motion for leave to file an amended answer and new matter. Paragraphs 30 and 31 of the amended pleading that was attached to the motion raised the above releases as a bar to liability. The trial court denied the motion for an amended pleading as to paragraphs 30 and 31 and granted the remaining motion. This appeal followed.[1]

---

1. An order denying leave to amend an answer to plead an affirmative defense is final and appealable. *Grota v. La Boccetta,* 425 Pa. 620, 623, 230 A.2d 206, 207 (1967).

■ Appellants contend that the trial court erred in refusing to allow appellants to amend their answer to raise the releases as an affirmative defense. The Rules of Civil Procedure provide in part that:

A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party or amend his [or her] pleading.

Pa.R.Civ.P. 1033. Although leave to amend pleadings is within the sound discretion of the trial court, such amendments should be allowed unless they violate law or prejudice the rights of the opposing party. *Jacob v. New Kensington Y.M.C.A.*, 312 Pa.Superior Ct. 533, 540, 459 A.2d 350, 353 (1983).

■ In the instant case, the trial court disallowed the amendment because it concluded that the releases signed by appellees violated public policy and were not the result of a freely bargained for exchange.[2] We agree.

■ Although disfavored, contracts against liability may be valid. *Leidy v. Deseret Enterprises, Inc.*, 252 Pa.Superior Ct. 162, 167, 381 A.2d 164, 167 (1977); *Phillips Home Furnishing, Inc. v. Continental Bank*, 231 Pa.Superior Ct. 174, 180, 331 A.2d 840, 843 (1974) *rev'd on other grounds*, 467 Pa. 43, 354 A.2d 542 (1976). "However, the law also recognized that lying behind these contracts is a residuum of public policy which is antagonistic to carte blanche exculpation from liability and thus developed the rule that these provisions would be strictly construed with every intendment against the party seeking their protection." *Phillips Home Furnishing, Inc. v. Continental Bank, supra* (citations omitted). Our Courts have refused to enforce such releases when the agreement does not reflect the free choice of one party who is forced to accept the releases by the necessities of his or her situation. *Id.*, 231 Pa.Superior

---

2. The trial court also concluded that the releases were not supported by consideration. Because we conclude that the releases were the result of the parties' disparate bargaining positions and thus violate public policy, we need not decide whether the releases were supported by adequate consideration.

Ct. at 181, 331 A.2d at 843. *Cf. Jenkins v. Peoples Cab Co.*, 208 Pa. Superior Ct. 131, 220 A.2d 669 (1966) (our Courts also disfavor releases secured through fraud or misrepresentation). In addition, our Courts have distinguished between exculpatory clauses that relate entirely to private affairs between the parties and those that contradict public policy as articulated by the legislature.

> Statutes grounded in public policy are those which forbid acts having a tendency to be injurious to the public good. The prime question is whether the thing forbidden is inimical to the public interest. Where public policy requires the observance of a statute, it cannot be waived by an individual or denied effect by courts, since the integrity of the rule expressed by the Legislature is necessary for the common welfare.

*Leidy v. Deseret Enterprises, Inc., supra* 252 Pa.Super. at 169–70, 381 A.2d at 168 (quoting *Boyd v. Smith*, 372 Pa. 306, 309–10, 94 A.2d 44, 46 (1953)).

Here, the releases signed by appellees contradicted a specific public policy articulated by our Legislature. The Pennsylvania Code mandates that:

> Patients or patient designees *shall be given* access to or a copy of their medical records, or both, in accordance with § 013.22(b)(15) (relating to implementation).... The patient or the patient's next of kin may be charged for the cost of reproducing the copies; however, the charges shall be reasonably related to the cost of making the copy.

28 Pa. Code § 115.29 (emphasis supplied). The Code further provides that a physician engages in unprofessional conduct when he or she fails to make available medical records or copies of medical records at the patient's request. 49 Pa.Code § 17.251(18).[3]

---

**3.** Although these provisions specifically refer to physicians, there is no reason why the same policy considerations should not apply equally to chiropractors. Indeed, appellants concede this point: "[w]hile there are no regulations regulating the disposition of the office records of chiropractors, ... *there is no reason for [chiropractors']*

The Code reflects, therefore, a clear policy in favor of a patient's access to his or her medical records. Indeed, there are obvious policy considerations why medical records should be made freely available to a patient at his or her request. Access to medical records allows a patient to participate meaningfully with his or her physician in making decisions regarding treatment and encourages informed consent. In addition, making copies of medical records available to a patient assists the patient in seeking a second opinion.

Here, contrary to this public policy embodied in the Pennsylvania Code, appellants failed to make appellee's medical records freely accessible to her. Instead, appellants required appellee to sign releases in exchange for the records to which she was entitled.[4] This requirement not only violated the policy of unfettered access to medical records but also violated the policy of freely bargained for exchanges. The only way appellee Soxman could obtain her medical records so that she could continue medical treatment with another doctor was to sign the release absolving appellants of all liability: she had no alternative. Such an agreement does not reflect the free choice of appellees because the necessities of her situation forced her to accept the terms set forth by appellants. *See Phillips Home Furnishing, Inc. v. Continental Bank, supra.* We decline to enforce the instant release agreement as it contradicts public policy. *See Leidy v. Deseret Enterprises, Inc., supra.* We conclude, therefore, that the trial court correctly denied appellants' motion to amend their answer to plead the releases as an affirmative defense.

For the foregoing reasons, we affirm the order of the trial court.

Affirmed.

*rights in their records to be any less than those of hospitals and medical doctors.* Brief for Appellants at 12 (emphasis supplied).

4. Appellants suggest that the release of appellee's medical records was not conditioned upon the execution of the release forms. This argument ignores appellants' own assertion that the releases were signed in consideration of appellee's receipt of her records. Brief for Appellants at 11. *See also General Release.*