## Aiman *et al. versus* Stout.

*Mental Incapacity, Proof of required to rescind executed Contract.—Ratification of Acts of Agent or Attorney express and implied.*

1. Mere mental weakness will not authorize a court of equity to set aside an executed contract, if it does not amount to inability to comprehend the contract, and is unaccompanied by evidence of imposition or undue influence.

2. One who was appointed attorney in fact, by an old man, to transact his business, bought at sheriff's sale real estate against which the latter held judgments, and by mistake as to the liens thereon was obliged to pay considerably more than his bid. After the purchase, and a further expenditure in improvements and repairs, he was released from all liability by his principal, who assumed the ownership. After the death of the principal, a bill in equity was filed by the heirs against the agent to compel him to take the property and account to the administrators for the amount expended, alleging decedent's incompetency through mental weakness to execute the release, and that losses had been sustained by defendant's mismanagement, to which he replied, the release, and ratification of the purchase by the decedent. The widow, one

son, and a daughter joined as co-defendants, and in their answer denied the alleged mental weakness of the decedent, when he executed the release. The court below decreed that the defendant should account for the amount expended, and that he should receive a deed for the property. On appeal it was *Held*, that where the preponderance of the testimony showed mental competency to execute the release, the acts of ownership by the decedent in his lifetime, his declarations of satisfaction as to the purchase, and that it was made by his direction, were not only evidence of subsequent ratification, but proved an intelligent execution of the power of attorney; that as no fraud or undue influence had been used, and, as no such mental weakness had been shown, as would avoid the release, as an executed contract, the decree of the court below charging the defendant with the entire sum expended by him as agent, and compelling him to take the property, was error.

3. The incompetency of the decedent to execute the release cannot be proved by the opinions of the witnesses called to testify that he was incapable of understanding it, when it was executed: else the question of competency would depend on the degree of intelligence each witness might think necessary to understand such an instrument, a test which would be variable and uncertain.

APPEAL from the Common Pleas of *Montgomery county.* In Equity.

This was a bill in equity filed by George W. Aiman and Benjamin F. Aiman, administrators, &c., of Arnold Aiman, deceased, (who sued as well as such administrators, as for the widow and heirs of said deceased), against Daniel Stout.

The bill set forth that Arnold Aiman, on the 27th of July 1858, being of advanced age and imbecile in mind, empowered the defendant, Daniel Stout, to be his attorney in fact, to collect moneys due to him and to pay demands against him. That the defendant accepted the trust, and thereupon Mr. Aiman delivered to him bonds, mortgages, and other securities for money, amounting in the aggregate to a large sum, among which were two judgments against Isaac Hawkins, of the county of Montgomery, one for $1000 and the other for $500; that, on the 23d of November 1858, the said Hawkins having become insolvent, executions issued out of the Court of Common Pleas of said county, at the suits of other judgment-creditors of the said Hawkins, whose liens were prior to those of the said Arnold Aiman; all the real estate of the said Hawkins, consisting of three separate tracts, was levied upon and sold to Daniel Stout, who directed the sheriff to return the property sold to Daniel Stout, attorney in fact for Arnold Aiman, which was done. That, at the time of the sale, the said real estate was subject to two mortgages, which were prior to all other liens, and were not divested by the said sheriff's sale; that upon one of these mortgages there was a balance due of $1127.67, and upon the other there was due $531.50, so that the said real estate actually cost the purchaser at said sheriff's sale the sum of $8534.17. That the whole amount of prior judgments was only $3740.75, and costs $208; that the liens of Arnold Aiman, with interest and

costs, were $1666.04, so that the highest sum it would have been necessary to bid for said real estate in order to pay the amount due Arnold Aiman in full was $5614.79; that the amount bid being $6875, the defendant gave for the real estate the sum of $1260.21 more than was necessary to secure the payment of the whole claim of the said Arnold Aiman. The bill further alleged that the defendant bid for and purchased the property without any previous examination of the title of Hawkins to the real estate, and the liens against it, and in utter ignorance of the legal effect of his bid, and without consulting counsel in relation thereto; but acted in the matter upon his own judgment and responsibility, although he had able counsel employed to advise and direct him in the management of his business as attorney in fact for said Arnold Aiman. That after the sale, to wit, on the 21st of January 1859, the defendant procured to be executed by Arnold Aiman (who continued to be imbecile and incompetent to transact any business) another power of attorney, giving him much more ample powers than those conferred on him by the first-mentioned letter of attorney. That this second power of attorney was antedated, and intended to remedy the deficiency in the former power, and to shield the defendant from the consequences of his ignorant and unfaithful conduct, and enable him to throw the loss arising from the purchase on Arnold Aiman. That the real estate, had the title been good, was not worth $6875. That the defendant, discovering this fact, and that his purchase was subject to the prior mortgages, after the sheriff had made return to the executions, filed exceptions to the sheriff's sale, on the grounds, 1. "That the bids of the purchaser for the real estate were made under a mistake as to the amount which he would be required to pay for the property; he believed, at the time of the purchase, that on paying the $6875, he would get a clear title; but he has since ascertained that two prior mortgages would, if the sale were confirmed, still remain liens on the real estate, thus obliging him to pay for the property an amount greatly beyond that at which he supposed he was purchasing the same, and much exceeding its true value." 2. "That the said bids, amounting in the aggregate to $6875, were the full value of the property, and if the sale were confirmed the purchaser would be subjected to the hardship of paying much more for the real estate than it was worth, and greatly beyond the amount which he inadvertently bid for the same." That on the hearing of these exceptions, the defendant offered himself as a witness to sustain the exceptions, and deposed substantially to the truth of the facts therein set forth, and upon cross-examination stated that he made the purchase on his own judgment, without any previous examination as to title or encumbrances, and without consulting counsel, although he had at the time

counsel employed to advise and assist him about the business of the said Arnold Aiman; that the exceptions were overruled; and the sheriff's deed was made at the instance of the defendant to Arnold Aiman; that the defendant took possession of the property, and leased it in the name of Arnold Aiman to tenants, who at the decease of Mr. Aiman were in the occupancy of the same.

The bill further alleged that in order to raise funds to pay the purchase-money, the defendant cancelled his own bond for $2500, and collected other bonds and mortgages amounting to several thousand dollars of the moneys of Arnold Aiman, thus converting over $10,000 of securities for money into the said real estate, and that he also expended other moneys in the improvement and repair of the said real estate. That the title of the said Hawkins, in the said real estate, was not a title in fee simple, nor any freehold interest, and that the title which vested in Arnold Aiman, by virtue of the sheriff's sale and deed, was a mere leasehold, not descendible to his heirs, but passing to his administrators as a chattel.

The bill further alleged that after the return to the executions, and on the same day the exceptions were filed to the sale, the defendant, anticipating the action of the court upon the exceptions, and to shield himself from the consequences of his ill-advised purchase, procured the said Arnold Aiman (who was utterly incapable of understanding the nature of the transaction) to execute an instrument of writing, under seal, releasing him, the said defendant, from all claims and demands and responsibility whatsoever, for or by reason of his bid upon and purchase of the said real estate at the sheriff's sale; that the said instrument was filed in the prothonotary's office of the Court of Common Pleas, and endorsed, "filed in open court, March 12th 1859," but that the complainants had no knowledge of its existence until the 14th of April 1860; that there was no consideration for said release; that the said Arnold Aiman was utterly incapable of understanding the nature, purport, or effect of it; that the release was greatly against his interest, and was fraudulent and void; that the complainants had only recently become acquainted with the facts in relation to said purchase, and that finding Arnold Aiman to be the reputed owner of said real estate, and the deed to him from the sheriff among his papers, the said George W. Aiman, as agent for the estate, renewed, at the usual time, some of the leases to the various tenants, and executed others to new tenants for the present year (1860), and now hold the same subject to the order and decree of the court.

The bill further alleged that "the defendant has neglected and refused to render a just and true account, and that he is indebted

to the said estate in a sum exceeding $9500, exclusive of $3000, besides interest, for which Arnold Aiman held judgment-bonds against him, and that he is not entitled to any allowance for any moneys expended by him in the purchase or repair of the premises, or to any compensation whatever for his services." This was followed by certain interrogatories to the defendant, numbered 1 to 10 inclusive, in reference to the matters contained therein, and concluded by praying that the defendant may be "decreed to account and pay over, and that said release of 5th March 1859 shall be delivered up to be cancelled, and that the defendant may be decreed to pay to the complainants the whole amount of money which he expended out of the estate of Arnold Aiman in the purchase, improvement, and repair of the said Hawkins real estate, and be decreed to accept from the complainants such conveyance as the court might direct them to make of whatever title Arnold Aiman acquired therein by virtue of the sheriff's sale, and of assignments of the leases, to the end that the estate of Arnold Aiman might be placed in the same, or as favourable a position as if the said real estate of Hawkins had not been purchased by the defendant for the said Arnold Aiman at the sheriff's sale, and that if the court should be of opinion that a good title in fee simple was vested in Arnold Aiman, by virtue of the sheriff's sale and deed, that they, the complainants, might have such relief as they might be entitled to in that aspect of the case, by a decree for a sale of the premises, and that the defendant make good any loss or deficiency, and by such other decree as might be sufficient to put the estate of the said Arnold Aiman in as good a condition as it would have been if the said purchase had not been made."

The answer of the defendant denied that Arnold Aiman was, at the time of the execution of the letter of attorney of the 27th of July 1858, of imbecile mind, and asserted, on the contrary, that he was then, and continued to be, until within a few weeks of his death, of sound mind and understanding, and entirely competent to understand the nature and character of all the transactions in which he was called upon to engage. Admitted that Arnold Aiman, upon the execution of the power of attorney, and subsequently, handed over to the defendant certain bonds, mortgages, and notes, amounting in the whole to $12.172.50; that Arnold Aiman retained, in his own hands, three bonds executed to him by the defendant himself, one for $2500, one for $2000, and the other for $1000; that among the claims were two judgments against Isaac Hawkins, amounting, with interest, to about $1600; that there were several prior liens against the real estate of Hawkins, under some of which said real estate was advertised by the sheriff to be sold on the 30th of December 1858, as stated in the bill; that there were two mortgages, prior

[Aiman *et al. v.* Stout.]

to all the liens, upon said real estate, as stated in the bill; that the judgments against Hawkins, prior to the Aiman judgments, amounted to $3948.75; that the Aiman judgments amounted to $1666.04, or thereabouts, so that if the lien of the two mortgages had been divested by the sheriff's sale, there would not have been money enough, by $398.96, to reach and pay the judgments held by Aiman; that the defendant attended the sheriff's sale, after consultation with Mr. Aiman, and with his full consent and approbation, with a view to make the real estate bring enough to pay the Aiman judgments, after discharging all prior liens, supposing at the time that the two mortgages, like the other encumbrances, would be paid out of the proceeds of sale, and the purchaser take a clear title; that the property was knocked off to him at his bid of $6875, and he signed the acknowledgment of purchase as attorney in fact for the person for whom he bought the property; that in a few days thereafter a rumour arose in the neighbourhood that the purchaser would be obliged to take the property *subject* to the two mortgages; that on hearing this rumour he consulted counsel, and was informed that such was the fact, unless he could be relieved from the purchase by exceptions to the sheriff's sale, on the ground of mistake; that he immediately apprised Mr. Aiman of all the facts, and explained to him the nature and character of the mistake which he had committed; that Mr. Aiman said that any man who did not know the law might make such a mistake, and that he, the defendant, should not suffer for it, and that, if there was to be any loss, he would take it upon himself; that under the advice of counsel, it was decided to make an effort to have the sheriff's sale set aside, and the exceptions, referred to in the bill, were accordingly prepared and signed; that no person could prove the mistake but the defendant, and in order to make him a competent witness for Mr. Aiman, on the hearing in court, the release of the 5th of March 1859 was executed to him by Mr. Aiman; and that the obtaining of his testimony was the only consideration for said release; that on the hearing of the exceptions, he testified substantially to the facts alleged therein, and that he had not consulted counsel previous to the sale, and that he was not aware, at the time of the sale, that the purchaser would not take the property clear of the mortgages; that he never had a thought of purchasing the property for himself, but bought it for Arnold Aiman, and paid for it out of the moneys of Mr. Aiman; that he was, shortly after the sale, notified by the holders of the mortgages to pay the money due on them, and he did so with funds belonging to Mr. Aiman; that all the complainants, long before the death of Arnold Aiman, were fully acquainted with the facts in relation to the purchase, but took no steps to hold the defendant accountable; and that, imme-

[Aiman *et al. v.* Stout.]

diately after the decease of Arnold Aiman, his son George W. Aiman, one of the complainants, assumed the management and control of his real estate, and leased it to the several tenants then occupying the same; that the letter of attorney of the 18th day of January 1859 was not antedated, nor had it any reference whatever to the sheriff's sale, nor was it ever designed to shield the defendant from the consequences of any act of his; and that the only object of it was to give him certain powers intended to be embraced in the first letter of attorney, but not specifically stated therein; that after the Hawkins real estate came into the possession of Arnold Aiman, the defendant expended a small sum, not exceeding $100, in necessary repairs; denying that the title acquired by Arnold Aiman, under the sheriff's sale, was nothing more than a leasehold, and descendible only as a chattel, and averring that the same was a good title in fee simple; also denying that at the time of the execution of the release of March 5th 1859, Arnold Aiman was incapable of understanding the nature, purport, or effect thereof, or that the same was fraudulent and void. The interrogatories were then answered, in accordance with the general answer, and concluded in the usual form.

To this the usual replication was filed, and on motion E. A. Banks, Esq., was appointed examiner, &c.

While the case was pending, the petition of Sarah Aiman, the widow, and A. R. Aiman and Sarah E. Brenizer, two of the heirs of said deceased, was presented, asking leave to withdraw their names from the bill as complainants, which was done, and their names added as defendants, "with the same force and effect as they had been made defendants in the bill, but without any right on their part to object thereafter for any real or supposed misjoinder or nonjoinder, &c."

By leave of the court complainant's bill was then amended, so as to charge the new defendants with having combined and confederated with Daniel Stout to prevent them from having the relief prayed for; and praying that they, or some or one of them, be decreed to take the Hawkins property at the full sum which it cost the estate of Arnold Aiman, and account to and with the other heirs for their portions thereof, &c.

October 16th 1860. D. H. Mulvany, attorney for Daniel Stout, moved the court to make an order permitting the said Stout to examine Sarah Aiman, widow of Arnold Aiman, deceased, and Susanna Breneizer, two of the co-defendants, as witnesses touching the matters alleged in the bill of complaint filed in this case; which on hearing the court permitted on the following terms:—

"The said Daniel Stout, by his said solicitor, having signified his willingness and desire that the order should be so limited and restricted as only to authorize him to examine the said co-defend-

[Aiman *et al. v.* Stout.]

ants, touching and concerning the sale and purchase of the real estate of Isaac Hawkins, and the matters and things connected therewith as set forth in the said bill of complaint, and such matters of fact as are connected with any real or supposed liability arising therefrom on the part of the said Daniel Stout, to either account, to the estate of the said Arnold Aiman, deceased, for the purchase-money and mortgage thereon, subject to which the land was sold, and retain the title himself in his own name and risk, or otherwise as the court shall direct and decree—and also touching and concerning the release from Arnold Aiman to the said Daniel Stout, dated the 5th of March 1859, and all matters of fact connected therewith, it is now, October 27th 1859, ordered that the said defendant, Daniel Stout, may examine the said Sarah Aiman and Susanna Breneizer, as witnesses to the several matters and things aforesaid as hereinbefore limited and set forth, subject to all just exceptions on the score of interest or otherwise."

Pending the motion to examine these last-named parties as witnesses, their answer to the bill was filed, in which the execution and delivery of the letter of attorney by Arnold Aiman to Daniel Stout, the delivery to him of the bonds and mortgages and notes mentioned in the bill, the existence of the judgments against Hawkins, the prior liens against him and their amounts as stated in the bill, the sale and purchase of Hawkins's real estate and its value, &c., were admitted, but the imbecility and unfitness for business in Mr. Aiman denied, and his ability to understand the nature and character of all his business transactions asserted.

They also expressed their belief that the property was purchased by Stout for Mr. Aiman, and that the whole transaction was known to all or nearly all the complainants before the death of Arnold Aiman, and that no one prior to that event ever suggested the thought of holding Mr. Stout in any way responsible; that all his transactions were fair and open; that the repairs made by him were necessary, and that the title to the property was valid and in fee simple. The interrogatories were also responded to by them in accordance with the general answer.

An immense amount of testimony was taken and reported by the examiner, and the case heard in the court below on the facts as presented in the report.

The court below (SMYSER, P. J.) delivered a learned and elaborate opinion on all the points raised by or in any proper way connected with the case, in which it was decided:—

1. That there was no element of intentional fraud in the case.

2. That the power of attorney of July 27th 1858 gave defendant no express or implied authority to purchase the property, or change the investment of the funds committed to his care from personal to real security.

3. That the second power of attorney of January 21st 1859 did not supply the defective authority of the first one, being in no sense retroactive, but operating in *future* only.

4. That the price paid by Mr. Stout for Mr. Aiman was the full value of a fee simple title to the land.

5. That the title orginally was a leasehold for five hundred years, down to 1790 and 1795, when the holders undertook to convey it in fee simple, but that neither that, nor any, nor all of the subsequent conveyances in fee simple, or the Statute of Limitations, had the effect of changing the nature of the estate.

6. That Mr. Stout was guilty of negligence in not properly informing himself of the defect in the title, and the effect of a judicial sale on the prior mortgages.

7. That, even if authorized by parol to attend the sheriff's sale and bid upon the property so as to cover the liens of Arnold Aiman, his powers were exceeded by bidding $1200 more than was necessary for this purpose.

8. That, although all these acts might have been rendered valid by an express or implied ratification, there was nothing in the evidence to show that this was done with or after such a knowledge of the facts as he was entitled to have from his agent.

9. That the heirs were not estopped from making this complaint by reason of their having given notice to quit to certain of the tenants in possession of the property a month after their father's death, and renewed some of their leases.

The court therefore decreed a reconveyance of the property by the administrators of Arnold Aiman to Daniel Stout, and granted the other relief prayed in the first part of their prayer, on the conditions set forth, but refused to allow damages in addition, or to reduce the commissions claimed in his account, and directed that the costs be paid by both parties, striking from the account all credit for moneys of Aiman paid to the sheriff by Stout as purchase-money, and in redemption of the prior mortgages and for improvements, and remitting the account to Mr. Banks as master for these corrections.

From this decree of the court the defendant appealed to this court.

The case was argued here by *D. H. Mulvany* for the appellant, and by *G. R. Fox* for complainants.

The opinion of the court was delivered, February 17th 1862, by
THOMPSON, J.—As we view this case, the material inquiries are, as to the capacity of Arnold Aiman to employ the defendant as agent at the time he did so; and secondly, his subsequent ratification of his acts, and release of him from liability in consequence

[Aiman *et al. v.* Stout.]

of the loss or mismanagement of the business in which he had been employed.

That he was competent to constitute Daniel Stout, the defendant, his agent in 1858, is a fact in the plaintiffs' case; is denied by nobody and may be assumed here: that as such agent he did not successfully manage that portion of his agency which is embraced in this controversy, may also be assumed as proved: that from want of knowledge, skill, or due care, his principal became involved in the payment of some $1200 more money than otherwise he might have been liable to pay, is claimed by the plaintiffs in the bill, and is the principal item in the account prayed. To meet this among other things, the defendant relies upon the ratification of his acts by Aiman, and a release by him from all liability arising out of the transaction in which the loss occurred.

It is not necessary to inquire into the measure of relief granted to the estate of the plaintiffs' intestate, by the court below through the medium of the account taken, as indemnifying against the alleged loss through the supineness of the defendant acting as agent, as we are of opinion that the plaintiffs are entirely precluded by the acts of their intestate from being entitled to any. It might be very doubtful, indeed, if necessary to rely solely on the ground as a defence, whether, under the terms of the employment of Stout to bid in the Hawkins property, at the request of Aiman, for this is the substance of the testimony, he was bound to investigate the state of the liens at all. The latter had lent his money and taken a judgment as security for it on the property, and the testimony seems to go far towards proving the bidding in of the property to have been by his direction and upon his own judgment. But as the defence is mainly placed upon the grounds already stated, we need not discuss this aspect of it.

Was Arnold Aiman *compos mentis* on the 5th of March 1859, when he executed the release relied on by the defendant? Was he competent to execute a valid contract, and did he continue so at the time of taking possession of the premises, and giving notice to the tenants on the premises that he was their landlord? If so, then a complete defence is established against the claim of the plaintiffs, to compel the defendant to account for all the money expended by him as agent of their intestate in and about the purchase, repair, and improvement of the Hawkins real estate bought in by him for the intestate.

In Graham *v.* Pancoast, 6 Casey 89, and in Nace *v.* Boyer, Id. 99, the degree of mental weakness which will authorize the setting aside an *executed* contract in equity, is discussed, and the rule deduced from the authorities is, that mental weakness not amounting to inability to comprehend the contract, when unac-

companied by evidence of imposition or undue influence, furnishes no ground for equitable interference. The contract here was executed.

There was but little testimony, if any, of such a degree of weakness as would bring the plaintiffs' intestate within the rule of these cases, and none whatever, of fraud or undue influence. Ten witnesses, two of whom were strongly impeached, were called by the plaintiffs to this point, but their testimony chiefly referred to a defect in the memory of Arnold Aiman, leaving the other faculties of his mind unimpeached. Opinions in a general way were called out from many of these witnesses, to the effect that they did not believe that he was capable of understanding the release at the time he executed it. I have not much respect for such a test. It is apt to be too much mixed with the uncertainty of what degree of intelligence the witness might think necessary to understand such an instrument, to afford any evidence of the strength of the mind under investigation. To such witnesses especially as could not read themselves, or had never seen such an instrument, it might in their opinion seem to require a much greater exertion of intellect than would be necessary to transact ordinary business, while to others familiar with such papers, a very low condition of mental power would be deemed sufficient. This test was uncertain and without much preliminary investigation for its foundation, was improper, if indeed it could be proper at any time. But to this extent and of this kind, was the testimony of most of the witnesses for the plaintiffs.

On the other hand, three members of the family of the deceased, namely, his widow, a son and a daughter, voluntarily applied to be made co-defendants with Stout the respondent—and they answer under oath and say, "that they expressly deny that the said Arnold Aiman, at the time he executed the said letter of attorney, was the weak-minded and imbecile person which the said complainants have represented him to be in their said bill of complaint." "That he was of entirely sound mind and understanding, and fully competent to understand the nature and character of all the business transactions in which he was called upon to engage, and so continued until within a few weeks of his decease."

Under an order for that purpose granted by the court, the widow was also examined as a witness, and testifying against her interest, upon the theory of the bill, she unhesitatingly reiterated in substance, the same matter contained in the joint answer of herself, her son, and daughter.

Twenty-eight other witnesses, neighbours and old acquaintances of the intestate, who testified to daily and weekly intercourse with him, in the transaction of business and otherwise,

[Aiman *et al. v.* Stout.]

fully sustain his entire competency to transact business intelligently, not only during the winter of 1859, but up until near his death in the autumn of that year. The number and opportunities of these witnesses, as well as their general intelligence, gave the preponderance greatly in favour of the evidence of sanity of Arnold Aiman, and consequently the validity of his acts, and we cannot well understand why this was not the conclusion of the learned judge below in view of all the testimony.

The point of mental capacity being established by the great preponderance of testimony, his acts of ownership over the property, his declarations of satisfaction with the purchase of the property—that it was cheap enough and would pay for itself in rents in course of time—that he had told Daniel Stout to buy it for him, for it was the "best thing they could do to save themselves, as they had money in it," not only were evidence of subsequent ratification, but clear away all pretence of want of intentional and intelligent execution of the power of attorney, and of any fraud or undue influence in obtaining it.

The release itself, under all these circumstances, must be allowed its full force and effect as a valid instrument. The real consideration as contradistinguished from the nominal, was for the purpose of qualifying the releasee to be a witness for the releasor, on the motion to set aside the sale. The testimony of the defendant was taken; was used by him, and his heirs and legal representatives after this are estopped from impeaching the release, or recovering against it on the ground of insufficiency of consideration.

From these views of the case we are of opinion that the court below erred in decreeing, that the entire sum expended by the accountant as agent for Arnold Aiman, in and about the purchase and repair of the property in question, should be charged against him in his account, and he be compelled to take the property himself. We strike all this out, and affirm the decree for the balance.

> And now, to wit, February 17th 1862. This cause came on to be heard in this court on appeal, sitting in *banc* for the Eastern District of Pennsylvania, and being argued by counsel, it is now ordered, adjudged, and decreed, that the decree of the Court of Common Pleas of Montgomery county in this case be reversed, and that the sum of $8645.69, charged against the accountant Daniel Stout, by the same decree, as expended by him as agent of Arnold Aiman deceased, in and about the purchase, improvement, and repairs of the Hawkins real estate, purchased by him as such agent, be stricken therefrom and disallowed, as not a proper charge against the accountant. And it

[Aiman *et al. v.* Stout.]

is further ordered, adjudged, and decreed, that the said accountant pay to the complainants, the balance in his hands due the estate of the said Arnold Aiman deceased, to wit, the sum of $341.71, with interest from the 14th day of January, A. D. 1861, and that the costs of suit be paid by complainants, together with the costs of this appeal.

*Per Curiam.*