415 A.2d 894

**Karen TAYLOR, Appellant,**

v.

**John AVI.**

Superior Court of Pennsylvania.

Submitted April 9, 1979.

Filed Dec. 5, 1979.

292

James G. Callas, Kittanning, for appellant.

S. Asher Winikoff, Pittsburgh, for appellee.

Before PRICE, HESTER and MONTGOMERY, JJ.

PRICE, Judge:

A trial was held on April 14, 1977, in which the jury returned a verdict for appellant, holding invalid a release signed by her which discharged appellee from any and all claims arising from an automobile accident. Appellee subse-

quently *moved for judgment non obstante veredicto,* and the trial court granted the motion upon the conclusion that it had erred during the trial in refusing appellee's request for binding instructions. This appeal followed.

The circumstances surrounding the signing of the release are as follows. On November 23, 1975, appellant was involved in an accident while riding in a car driven by appellee, and sustained injuries to the head and a broken leg. She was admitted to Armstrong County Memorial Hospital and on November 24 was transferred on the advice of her doctor, Samuel Cross, to Presbyterian University Medical Center for neurosurgical consultation. There, she remained under the care of a Dr. Maroon until she was transferred back to Armstrong County Memorial Hospital on December 5. On December 10, she was discharged in the care of her parents, and she remained at their home until early February 1976. At that time, she returned to her own home accompanied by her three-year old daughter, and continued to report for regular check-ups with Dr. Maroon and Dr. Cross until October 1976.

Following the accident, appellant suffered from an impaired memory, decreased ability to concentrate on such things as reading, and increased irritability. The precise sequence of transactions occurring between Robert Clark, the adjustor from appellee's insurance company, and appellant and her parents is unclear due to appellant's and her mother's inability to recall the events. Apparently, Mr. Clark made two visits prior to the signing of the release. The first meeting took place in January 1976 at the home of appellant's parents. Both appellant and her parents were present for the discussion, which centered on appellant's insurance company's responsibility under the no-fault law. Mr. Clark did not mention any payment to be made by his insurance company.

The second visit, arranged by Mr. Clark, was precipitated by a letter from appellant's mother to Mr. Clark's insurance company claiming reimbursement for her services and lost wages incurred in caring for her daughter. The visit oc-

curred in February subsequent to appellant's departure from her parents' home. Mr. Clark met with appellant's mother to explain that his company was not directly responsible to her, but that her daughter could reimburse her out of any settlement made. Ostensibly, settlement in the amount of $400[1] and the meaning of the release to be signed as consideration were discussed between Mr. Clark and appellant's mother. The meeting concluded with appellant's mother agreeing to arrange a meeting between her daughter and Mr. Clark to enable him to obtain the release.

The meeting between Mr. Clark and appellant occurred on February 20, 1976, at the latter's home, in the presence of her sister-in-law, Judith. According to Mr. Clark, appellant appeared to be expecting him and to be acquainted with the $400 figure. After a brief discussion during which Mr. Clark explained the meaning of the release, appellant signed the release and Judith witnessed it. A $400 check bearing the legend that it was payment for the release of all claims against Joseph and John Avi was then exchanged. Altogether, the meeting lasted ten to fifteen minutes. Appellant testified that she had no recollection of this meeting.

Appellant cashed the check, and on April 14, 1976, filed suit against John Avi for damages arising out of the November 23, 1975 accident. In his answer, appellee pleaded the release as a complete defense.

It is hornbook law that in deciding a motion for judgment n. o. v. the evidence must be considered in the light most favorable to the verdict winner, in this case appellant, and she must be given the benefit of every reasonable inference of fact arising from the evidence. *Broxie v. Household Finance Co.*, 472 Pa. 373, 372 A.2d 741 (1977); *Flaherty v. Pennsylvania Railroad Co.*, 426 Pa. 83, 231 A.2d 179 (1967). The one limitation is that these inferences must not amount to mere guess, conjecture, or surmise. *Flaherty v. Pennsylvania Railroad Co., supra.*

1. Mr. Clark stated that he had no recollection of how this figure was arrived at as an acceptable settlement figure.

█ Appellant seeks to overturn the release contending that it is invalid due to her mental incapacity at the time it was obtained. Under Pennsylvania law, it is presumed that an adult is competent to execute a release, and thus, a signed document yields the presumption that it accurately expresses the state of mind of the signing party. *Dorenzo v. General Motors Corp.*, 334 F.Supp. 1155 (E.D.Pa.1971); *Lessa v. Staler*, 75 Pa.Super. 468 (1921). The burden of amassing sufficient evidence of invalidity to justify submission of the issue to the jury is a heavy one. To meet the burden, the evidence must be "clear, precise, and indubitable." *Elliott v. Clawson*, 416 Pa. 34, 204 A.2d 272 (1964); *Nocito v. Lannuitti*, 402 Pa. 288, 167 A.2d 262 (1961); *Jenkins v. Peoples Cab Co.*, 208 Pa.Super. 131, 220 A.2d 669 (1966). This phrase has a technical meaning which was described in *Evans v. Marks*, 421 Pa. 146, 151, 218 A.2d 802, 804 (1966) and *Broida v. Travelers Insurance Co.*, 316 Pa. 444, 448, 175 A. 492, 494 (1934), as follows:

> "the witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. . . ."

The United States Supreme Court in *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942), adopted similar language in its discussion of the Pennsylvania rule, and added that evidence that is clear, precise, and indubitable is evidence "that is not only found to be credible but of such weight and directness as to make out the facts alleged beyond a reasonable doubt." *Id.* at 242, 63 S.Ct. at 249. *Vogel v. Taub*, 316 Pa. 41, 173 A. 270 (1934). Appellant argues that she has met this burden of showing her mental incapacity. We disagree.

█ It is well settled that mere weakness of intellect resulting from sickness or old age is not legal grounds to set aside an executed contract if sufficient intelligence remains

to comprehend the nature and character of the transaction, and no evidence of fraud, mutual mistake or undue influence is present.[2] *Law v. Mackie*, 373 Pa. 212, 95 A.2d 656 (1953); *Aiman v. Stout*, 42 Pa. 114 (1862); *Dulnikowski v. Stanziano*, 195 Pa.Super. 508, 172 A.2d 182 (1961). The determination whether appellant had an intelligent understanding of the release involves many factors, some of which were delineated in *Jenkins v. Peoples Cab Co., supra*, as follows: (1) the mental and physical condition of the signer; (2) the circumstances in which the release was obtained; (3) the amount paid for the release; and (4) the span of time between the accident and the signing of the release. *See Gordon v. Great Atlantic & Pacific Tea Co.*, 243 Pa. 330, 90 A. 78 (1914).

◼ Regarding appellant's mental and physical condition, the instant facts reveal that Mr. Clark was unaware of any difficulty appellant was having understanding the explanation and signing of the release. Both the statement of Dr. Maroon and the testimony of Dr. Cross, offered by appellant in support of her claim of mental incapacity on February 20, 1976, were based on their examination of her on January 29, 1976, and February 9, 1976, respectively, and other visits following the signing of the release by more than a month. Neither had examined her at a time contemporaneous to the critical time of signing. Although the testimony of the doctors is admissible and entitled to some weight, the testimony of Mr. Clark, who observed the speech and conduct of appellant on February 20, the very day of the signing, is entitled to greater weight because of the importance of establishing mental capacity as of a particular date. *Girsh Trust*, 410 Pa. 455, 189 A.2d 852 (1963). "[W]here mental capacity is at issue, the real question is the condition of the person at the very time he executed the instrument or made

2. Although mental weakness may not be sufficient to constitute insanity, the trial court recognized that designing persons may take advantage of those partially unable to protect themselves and that evidence of such weakness may be important in finding fraud or undue influence. It concluded however, that none of these grounds were indicated by the evidence, and after a careful review of the record, we agree. Hence, we move directly to the sole issue addressed in the briefs, viz., appellant's mental capacity.

the gift in question." *Sobel v. Sobel,* 435 Pa. 80, 82–83, 254 A.2d 649, 651 (1969).

■ Furthermore, although appellant testified as to her own mental infirmities at the time of signing, *i. e.,* lapses of memory such that she would not recognize old friends, irritability, and an inability to reason logically, these are not sufficient to prove incapacity. Regarding the inability to reason logically, appellant testified that this impairment appeared on a visit to a counselor and had some connection with her memory loss. However,

> "[f]ailure of memory does not prove incapacity, unless it is total or so extended as to make incapacity practically certain. A testator may not be able at all times to recollect the names of persons or families of those with whom he has been intimately acquainted . . . and yet his understanding of the ordinary transactions of his life may be sound." *Lawrence's Estate,* 286 Pa. 58, 65, 132 A. 786, 789 (1926).

Thus, one may suffer a defect in memory, but the other faculties of the mind may be unimpaired such that the capability to understand the nature and character of business transactions remains. *See Aiman v. Stout, supra; Kish v. Bakaysa,* 330 Pa. 533, 199 A. 321 (1938).

The circumstances in which the release was obtained are also not indicative of any lack of understanding in the nature of the business being transacted. Mr. Clark testified that he explained the meaning of the release to appellant three separate times; before, during, and after the signing. Appellant was at her own home and in the company of her sister-in-law. Neither of them raised any discussion over the figure of settlement nor needed any persuasion to sign the document. Appellant's own testimony is unclear and contradictory as to her understanding at the time of signing the release. In response to a question whether at any time after signing until the time of the trial she did not realize that she had released her rights against John Avi, she stated that she had realized it all the time but, "I didn't know what I was doing. I mean I didn't understand what I was—what the consequences would be." (N.T. 69a).

Appellant placed no evidence bearing on the third consideration, the adequacy of the sum received in return for the release. Her mother testified to lacking any recollection of a second meeting with Mr. Clark in which the sum might have been discussed. Appellant did cash the check, however, and Mr. Clark testified that the figure of $400 seemed acceptable to both appellant and her mother during his meetings with them.

The fourth and final factor, the span of time between the accident and the signing of the release, was also not unreasonable in the present case. There was a three month interval between the occurrence of the accident and the signing of the release and over two months between appellant's departure from the hospital and the signing. These circumstances are far removed from the facts of *Jenkins v. Peoples Cab Co., supra*, upon which appellant relies. In that case, a release was overturned because the signature was obtained the day after the accident while the signer was on her way to visit a doctor, who testified at trial as to her pain on that particular day. Clearly, no such basis exists to find the instant release invalid. *See Young v. Robertshaw Controls Co.*, 430 F.Supp. 1265 (E.D.Pa.1977) (distinguishing *Jenkins* because plaintiff there was so disabled with pain).

As the party asserting invalidity, appellant had the burden of showing the invalidity of the agreement by clear, precise, and indubitable evidence. *Young v. Robertshaw Controls Co., supra; Keys v. Hanscom Brothers, Inc.*, 288 Pa. 389, 135 A. 860 (1927); *Swanger v. Pyles*, 204 Pa.Super. 72, 203 A.2d 488 (1964). Patently, this was not done. Appellant's testimony and that of her mother was often confused and unclear as to the course of events because neither had a clear recollection of that period. It is the right and duty of the trial court to judge whether the evidence meets the legal standard of required proof to reach the jury for a determination of its truth; this is always a question of law. *Keys v. Hanscom Brothers, Inc., supra.* We agree with the trial judge that appellant's evidence simply does not meet the standard required of it.

Having concluded that judgment n. o. v. was properly awarded by the trial court, we find it unnecessary to address the issue whether appellant ratified the release by her subsequent conduct of retaining and using the money received in consideration for the release without offer of its return before bringing suit.

Accordingly, judgment n. o. v. is affirmed.