**Smalley v. JHA-Markleysburg Inc.**

*Peter D. Giglione,* for plaintiff.
*David Stutman, Daniel Fautel* and *Arthur Hoffman,* for defendants.

SOLOMON, *J.,* November 15, 2007—

## BACKGROUND

Initially commenced at docket no. 1514 of 2005, G.D., on June 21, 2005, this action was consolidated after a complaint against other defendants was filed at docket no. 30 of 2006, G.D. Overall, this consolidated action alleges professional negligence, corporate negligence, negligence, and wrongful death against the defendants. Among those named as defendants were Beverly Enter-

prises-Pennsylvania Inc. d/b/a Beverly Healthcare-Uniontown, Beverly Health and Rehabilitation Services Inc. and Beverly Enterprises Inc.

The defendants filed preliminary objections to the complaint of the plaintiff seeking, in part, an enforcement of an arbitration agreement entered into by F. Randall Smalley (plaintiff), on March 3, 2004, on behalf of his father, Frederick Smalley Jr. (decedent). The plaintiff asserts that he did not have authority to enter into the arbitration agreement on behalf of his father because his father was incapacitated at the time of the execution of a power of attorney. An evidentiary hearing was then held on the issue of the validity of the arbitration agreement.

## STATEMENT OF THE CASE

Prior to his death, the decedent required full-time care from a nursing facility. In his complaint, the plaintiff alleges that during his stay at certain nursing facilities, the decedent was not provided with adequate health care, with the lack thereof ultimately contributing to his death. Among these allegations, the plaintiff's complaint avers that his father failed to receive the proper degree of care at Beverly Healthcare-Uniontown,[1] a facility owned, operated, and managed by the defendants.[2]

On March 3, 2004, while at the Henry Clay Villa facility, and prior to being admitted to the facility of the defendants, the decedent executed a document granting the

---

1. Plaintiff's complaint, filed March 1, 2006, paragraph 145.
2. *Id.* at paragraphs 11-17.

plaintiff power of attorney.[3] The plaintiff wanted the power of attorney so that he would have the ability to cash the decedent's checks and to transfer a property interest of his father's.[4] Present as a witness during the execution of this power of attorney was Brenda Waters, a notary public.[5]

In the months leading up to the execution of the power of attorney, the decedent often had difficulty with conversations because his speech was slurred.[6] In his deposition, the plaintiff stated that his father did not read the document[7] and that when he executed the document, he "scratched his name on the document."[8] With regard to whether his father knew the purpose of the document when he signed it, the plaintiff offers contradictory testimony. When asked if his father appeared to know why the power of attorney was needed, the plaintiff answered, "[a]s far as I know."[9] Then, when later asked if his father had the mental ability to sign a power of attorney, he responded, "I don't think he would even know totally what was going on,"[10] describing his father's condition as being similar to someone who had suffered a stroke.[11]

---

3. Deposition of F. Randall Smalley Jr., taken August 2, 2006, at 18.
4. *Id.* at 32, 37.
5. *Id.* at 19.
6. *Id.* at 56.
7. *Id.* at 39.
8. *Id.* at 24.
9. *Id.* at 39.
10. *Id.* at 43.
11. *Id.* at 50.

On June 2, 2004, due to a worsening medical condition, the decedent was admitted to Beverly Healthcare-Uniontown.[12] Two days later, on behalf of his father, the plaintiff signed an arbitration agreement that was witnessed by Sharon Bealko.[13] The arbitration agreement provides that:

"It is understood and agreed by facility and resident that any and all claims, disputes, and controversies . . . arising out of, or connection with, or relating in any way to the admissions agreement or any service or health care provided by the facility to the resident shall be resolved exclusively by binding arbitration. . . ."[14]

After instituting this action, the plaintiff obtained the affidavit of Dr. Frank Perrone, dated July 25, 2006, asserting that Frederick Smalley had a history of mental illness.[15] The doctor states that during the period from April 2002 through May 10, 2004, he regularly treated the decedent.[16] Primarily, the doctor opines that the decedent suffered from dementia and severe cognitive impairment connected to years of alcohol abuse.[17] Since the decedent suffered from these conditions, Dr. Perrone *believed* that Frederick Smalley lacked the mental capacity to know the nature of his actions at the time he executed the power of attorney.[18] This conclusion is based

---

12. Arbitration agreement, defendants' preliminary objections, exhibit C, dated June 2, 2004.

13. Deposition of Sharon R. Bealko, taken August 2, 2006, at 23.

14. Arbitration agreement, *supra* note 12.

15. July 25, 2006, affidavit of Dr. Frank Perrone, filed by the plaintiff on August 2, 2007.

16. *Id.*

17. *Id.*

18: *Id.*

upon a review of medical records as well as his recollections of the decedent while he was a patient.[19]

## DISCUSSION

The preliminary objections of the defendants seek to compel the plaintiff to submit to arbitration, arguing that since a valid arbitration agreement was entered into by the plaintiff and Beverly Healthcare-Uniontown, the plaintiff's only available remedy is through the arbitration process. In opposition, the plaintiff claims that the arbitration agreement is not a valid contract since it was executed when the plaintiff, under his power of attorney, lacked authority due to his father's incapacity.

Under Pa.R.C.P. 1028(c)(2), if an issue of fact is raised by preliminary objection, the court shall consider evidence by "deposition or otherwise." Further, the Pennsylvania Superior Court has held that where facts are controverted by preliminary objections, the trial court must resolve the dispute by receiving evidence through "interrogatories, depositions, or an evidentiary hearing." *Slota v. Moorings Ltd.,* 343 Pa. Super. 96, 100, 494 A.2d 1, 3 (1985). The submission of evidence by affidavit is not recommended to determine preliminary objections, but courts have relied on affidavits when "the facts attested to . . . [are] both clear and specific." *Ambrose v. Cross Creek Condominiums,* 412 Pa. Super. 1, 14, 602 A.2d 864, 870 (1992).

As to arbitration agreements, the settlement of disputes through arbitration is not against public policy but is encouraged when proper to lessen over-crowded and

---

19. *Id.*

congested court dockets. *Mendelson v. Shrager,* 432 Pa. 383, 385, 248 A.2d 234, 235 (1968). Under Pa.R.C.P. 1028(a)(6), a party may compel arbitration by filing preliminary objections on the grounds that the claim is subject to a prior agreement for alternative dispute resolution. When a party seeks to compel arbitration, the trial court's inquiry is limited to determining whether a valid arbitration agreement was entered into and, if so, whether the dispute in question is within the scope of the arbitration provision. *H.L. Libby Corp. v. Skelly and Loy Inc.,* 910 F. Supp. 195, 199 (1995), citing *PBS Coal Inc. v. Hardhat Mining Inc.,* 429 Pa. Super. 372, 377, 632 A.2d 903, 905 (1993). If a trial court determines that arbitration is required, then the arbitrators will be the final judges of both law and fact, unless restricted by the agreement. *Messa v. State Farm Insurance Company,* 433 Pa. Super. 594, 599, 641 A.2d 1167, 1169 (1994).

In order to determine whether a valid arbitration agreement exists, the underlying issue of whether the plaintiff's father had the requisite capacity to execute a power of attorney must be determined. Under Pennsylvania law, a totally incapacitated person is incapable of making any contract, gift or instrument in writing. 20 Pa.C.S. §5524. An "incapacitated" person is an "adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety." 20 Pa.C.S. §5501.

Furthermore, when a case involves the issue of the mental capacity, the question is the condition of the per-

son at the "very time he executed the instrument. . . ." *Taylor v. Avi,* 272 Pa. Super. 291, 297-98, 415 A.2d 894, 897 (1979). There must be strong evidence of incapacity; "mere weakness of intellect resulting from sickness or old age" will not set aside an executed contract if an individual still comprehends the "nature and character" of the transaction. *Id.,* 272 Pa. Super. at 296-97, 415 A.2d at 897.

In support of his contention that the decedent was incapacitated, the plaintiff relies upon the decedent not reading the power of attorney, that he spoke with slurred speech, and that he had a history of suffering from mental impairment. As to his first contention, we note that the failure to read a contract does not render the instrument invalid. The Supreme Court of Pennsylvania has held that failure to read a contract is "an unavailing excuse or defense" and cannot justify an "avoidance, modification or nullification" of the contract. *Olson Estate,* 447 Pa. 483, 488, 291 A.2d 95, 98 (1972). As to the decedent speaking with slurred speech, the mere fact that he spoke with slurred speech is not conclusive evidence that he was incapacitated or lacked mental capacity. Such a condition may result from physical decline, or other illnesses, but without evidence that the individual lacked comprehension, it is certainly not enough to infer incapacity.

As to the decedent's history of suffering from mental impairment, although the record reveals certain evidence that the plaintiff's father had a history of dementia related to alcohol abuse, that evidence does not establish that the decedent was incapacitated on the day in question. In his deposition, the plaintiff testified, initially, that

as far as he knew, the decedent understood why the power of attorney was needed. Later, he testified that he did not "think" that his father knew totally. This evidence certainly is not strong evidence of incapacity. Further, neither the plaintiff nor the independent notary witness expressed any concerns that the decedent lacked capacity at the time of his execution of the power of attorney. In fact, the plaintiff, as he testified, used the power of attorney to his benefit and has only raised the issue of incapacity in this lawsuit.

As to the affidavit of Dr. Perrone, the facts attested to are not both clear and certain, or specific, so as to permit this court to rely upon it and determine that the decedent was incapacitated at the time he executed the power of attorney. Most notably, the affidavit contains an opinion rendered over two years after the death of the decedent and does not specifically describe the decedent's mental capacity at the time of his execution of the power of attorney. It merely states a general conclusion that the doctor "believes" the decedent was incapacitated throughout his treatment. This "belief" is not stated with any medical certainty, and certainly not within reasonable medical certainty. Therefore, since the record does not support a finding that the decedent lacked the requisite capacity at the time when the power of attorney was executed, we can reach no conclusion other than to find that the arbitration agreement is valid.

Since a valid arbitration agreement exists between the parties, it must then be determined whether the present dispute is within its scope. Here, the plaintiff alleges that the defendants were negligent in providing health care to his father, resulting in injury and leading to his death.

A reading of the arbitration agreement at issue clearly establishes that "any claim, dispute, or controversy" which is connected or related to "health care provided by the facility" must be resolved "exclusively by binding arbitration." Since the present dispute arises from the health care provided to the decedent while he stayed at the defendants' facility, it clearly is within the scope of the arbitration agreement.

Wherefore, we will enter the following order.

### ORDER

And now, November 15, 2007, it is hereby ordered and decreed that the preliminary objections of the defendants are sustained and that this matter must be submitted to arbitration in accordance with the arbitration agreement entered into on June 4, 2004.