NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-4539

_____

JEFFREY P. DATTO, Ph.D.

v.

BRIAN HARRISON; THOMAS LEWIS;
THOMAS KLEIN, M.D.; MARK GRAHAM, M.D.;
THOMAS JEFFERSON UNIVERSITY; THOMAS
JEFFERSON UNIVERSITY HOSPITALS, INC.;
JOHN DOE 1; JOHN DOE 2; JOHN DOE 3;
JOHN DOE 4; JOHN DOE 5
(2-09-cv-02064)

_____

JEFFREY P. DATTO, Ph.D.

v.

THOMAS JEFFERSON UNIVERSITY;
DR. THOMAS KLEIN; DR. THOMAS NASCA;
DR. JAMES FINK; DR. ARTHUR FELDMAN;
DR. MARK GRAHAM; DR. NORA SANFORFI;
DR. CHARLES POHL; DR. CLARA CALLAHAN;
DR. GEORGE PEREIRA-OGAN; DR. JOHN CARUSO;
DR. BRIAN HARRISON; DR. ROBERT BARCHI; JOHN DOES 1-5
(2-09-cv-02549)

Jeffrey P. Datto, Ph.D,
Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. Nos. 09-cv-02064 and 09-cv-02549)
District Judge:  Honorable Mary A. McLaughlin

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 3, 2012

Before:  RENDELL, FISHER and GARTH, <u>Circuit Judges</u>

(Opinion filed:  December 7, 2012 )
_____

OPINION OF THE COURT
_____

PER CURIAM.

Jeffrey P. Datto appeals an order of the United States District Court for the Eastern District of Pennsylvania denying his motion for relief under Federal Rule of Civil Procedure 60(b).  For the reasons that follow, we will affirm.

I.

Because we write primarily for the benefit of the parties, who in their briefing have displayed in-depth familiarity with the history of this case, we set forth only a brief summary of the relevant background.  In 2005, appellee Thomas Jefferson University ("Jefferson") dismissed Datto from its M.D./Ph.D. program during Datto's final year of medical school, which prevented Datto from attaining an M.D. degree.  The parties disputed the reasons why Jefferson dismissed Datto.  In 2007, Datto filed three suits against Jefferson and other defendants in Pennsylvania state court, seeking, among other things, reinstatement to the M.D. program.  Two of Datto's suits were removed to federal

court, ultimately docketed as E.D. Pa. Civ. Nos. 09-cv-02549 and 09-cv-02064, and consolidated for all purposes.

The parties agreed to participate in settlement discussions, which were mediated by Magistrate Judge Elizabeth T. Hey. After lengthy negotiations, the parties reached an agreement calling for Datto to dismiss his three suits in exchange for a monetary payment from Jefferson. The agreement did not include any opportunity for Datto to gain readmission to Jefferson. On June 2, 2010, Datto signed the settlement agreement during a conference before Judge Hey, acknowledging on the record that he had reviewed the agreement and intended to be bound by it. Datto voluntarily dismissed with prejudice his suits against the defendants.

Thereafter, on November 30, 2010, Datto submitted a letter to the District Court seeking to vacate the dismissal and reopen his cases. He argued that he had been unable to appreciate the binding nature of the settlement agreement because he was mentally impaired at the time of signing and hindered by his inability to discuss the settlement with his treating psychiatrists. Datto submitted a letter from a psychiatrist, Dr. Thase, who opined that, "on the basis of [Datto's] description of the events that occurred on the day of signing the settlement agreement and the severity of the depression that has followed, … he was in the midst of an episode of bipolar disorder and had diminished capacity to understand the binding nature of the settlement agreement." Datto further argued that he was unduly pressured to settle due to several factors, including: Judge Hey's assurances that the settlement was fair; an allegedly biased mediation process; the

3

District Court's refusal to appoint counsel and address Datto's request for preliminary injunctive relief; defendants' alleged discovery abuses; and the financial hardship that Datto allegedly suffered following his dismissal from Jefferson.

After holding an evidentiary hearing, which included testimony from Judge Hey as well as from Datto, the District Court rendered factual determinations and denied the Rule 60(b) motion. Applying Rule 60(b)(3), which affords relief due to fraud, misrepresentation, or misconduct by an opposing party, the District Court concluded that defendants did not misrepresent to Datto their position regarding his inability to gain readmission to Jefferson's medical school.[1] Applying the "catchall" provision of Rule 60(b)(6), the District Court held that Datto's communications with defendants leading up to his signing of the settlement, including his proposed amendments to the agreement, show that Datto understood the agreement's terms and that the settlement would prevent him from further association with Jefferson. The District Court also found that Datto was not subjected to undue influence or pressure to settle, and that no extraordinary

---

[1] Because Datto does not challenge the denial of Rule 60(b)(3) relief on this appeal, we deem that issue waived. See Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193, 202-03 (3d Cir. 2004) ("[A]n issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court."). In addition, we note that, while the District Court did not specifically address Datto's contention that Rule 60(b)(1) provides a basis for relief because Datto made a "mistake" in accepting the settlement, any such contention is without merit. See Coltec Indus., Inc. v. Hobgood, 280 F.3d 262, 275 (3d Cir. 2002) (holding that, even if party's decision to settle "was improvident in hindsight, the decision is made and cannot be revisited"). Likewise, Datto's alleged mistaken belief that the law would allow him to unilaterally revoke the settlement agreement did not warrant Rule 60(b)(1) relief.

circumstance warranted reopening the cases. After denying Datto's motion for reconsideration (a ruling that Datto does not challenge), Datto timely filed this appeal.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the denial of a Rule 60(b) motion for abuse of discretion. Budget Blinds, Inc. v. White, 536 F.3d 244, 251 (3d Cir. 2008). Because the District Court held an evidentiary hearing, its "exercise of discretion in light of supportable findings of fact will not be disturbed unless there was a clear abuse." Inmates of Allegheny Cnty. Jail v. Wecht, 754 F.2d 120, 127 (3d Cir. 1985). "An abuse of discretion may be found when the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." Reform Party of Allegheny Cnty. v. Allegheny Cnty. Dep't of Elections, 174 F.3d 305, 311 (3d Cir.1999) (quotation marks omitted).

The District Court considered Datto's allegations of mental impairment and undue influence under Rule 60(b)(6), which permits relief from judgment only in "extraordinary circumstances." Budget Blinds, 536 F.3d at 255. Extraordinary circumstances "rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices." Id. Furthermore, Rule 60(b)(6) is not a means "to escape the effects of a bargain [the movant] regretted in hindsight." Coltec Indus., 280 F.3d at 273.

After considering the testimony presented at the evidentiary hearing, the parties' arguments and submissions, and Datto's emails and other communications leading up to the settlement agreement, the District Court concluded that Datto was not incompetent,

5

that he was not subjected to undue influence when he agreed to the settlement, and that he was able to appreciate the binding nature of the agreement. In so holding, the District Court found it significant that: Judge Hey observed Datto on the day of the signing and concluded that he was capable of deciding whether to settle; Datto initiated sophisticated changes to the settlement terms, including on the day he entered into the agreement; Datto's communications with defendants show that he understood the consequences of settling, including that he would be precluded from further association with Jefferson; Datto testified on the record that he made the decision to settle intending to be bound; Judge Hey reiterated to Datto throughout the process that he was free to discontinue negotiations and elect not to settle; and Datto had consulted with his psychiatrist, Dr. Thase, prior to accepting the settlement terms.[2]

Under Pennsylvania law, which governs the issue of Datto's capacity to enter into the settlement agreement, "it is presumed that an adult is competent to execute a release, and thus, a signed document yields the presumption that it accurately expresses the state of mind of the signing party." Taylor v. Avi, 415 A.2d 894, 896 (Pa. Super. Ct. 1979). The party alleging incompetence has "the burden of showing the invalidity of the agreement by clear, precise, and indubitable evidence." Id. at 898. "[M]ere weakness of

---

[2] Dr. Thase had advised Datto not to enter into the settlement agreement – advice that Datto elected not to follow. While Datto now claims prejudice in the fact that he was prohibited from discussing the settlement terms with anyone other than his parents, his tax advisor, and Dr. Thase, there is no basis in the record to conclude that Datto would not have signed the agreement had he been permitted to consult others.

intellect resulting from sickness or old age is not legal grounds to set aside an executed contract if sufficient intelligence remains to comprehend the nature and character of the transaction, and no evidence of fraud, mutual mistake or undue influence is present." Id. at 897. In addition, "[t]he testimony of persons who observed the alleged incompetent on the date in question is generally superior to testimony as to observations made prior to and subsequent to that date." Weir v. Estate of Ciao, 556 A.2d 819, 824 (Pa. 1989).

Applying these standards, we conclude that the record fully supports the determination that Datto knowingly and voluntarily entered into the settlement agreement. Although Dr. Thase opined that Datto was suffering from bipolar disorder and "had diminished capacity to understand the binding nature of the settlement agreement," the District Court carefully considered the testimony of individuals who observed Datto when he signed the agreement, particularly Judge Hey, as well as Datto's communications preceding the settlement. Given the nature of this evidence, Datto's capacity to enter into the settlement agreement cannot reasonably be questioned, and we thus cannot say that the District Court committed a clear abuse of discretion by denying Rule 60(b) relief.

Datto raises several contentions on appeal, none of which warrant a different result. Datto contends that the District Court abused its discretion by not appointing an attorney to represent him in the proceedings prior to settlement.[3] Datto argues that the

_____

[3] Datto was represented by counsel at various times before the District Court. In 2008, prior to his counsel filing a motion to withdraw, Datto requested court-appointed counsel

District Court should have appointed counsel sua sponte under 28 U.S.C. § 1915(e)(1), which provides that "[t]he court may request an attorney to represent any person *unable to afford counsel*." (Emphasis added.) Datto never demonstrated an inability to afford counsel, and there is no evidence that he qualified for counsel under § 1915(e)(1). See Brightwell v. Lehman, 637 F.3d 187, 191-92 (3d Cir. 2011). Because the District Court was under no obligation to appoint counsel for Datto, its failure to do so provides no basis to relieve Datto from his decision to enter into the settlement agreement.

Datto also argues that the District Court erred by failing promptly to address his motion for preliminary injunctive relief.[4] Any delay in addressing the preliminary injunction motion, however, does not amount to an extraordinary circumstance that would allow Datto to be relieved from his decision to settle and dismiss these cases.

Finally, Datto argues that the District Court's evidentiary hearing on the Rule 60(b) motion was improper because he was unprepared to question Judge Hey, he was

---

under 42 U.S.C. § 2000e-5. The District Court denied the request because Datto was still represented by counsel, Datto was not entitled to appointed counsel under Title VII, and no program existed to provide counsel for Datto. Datto's counsel then withdrew, and Datto proceeded pro se until February 2010, when he obtained new counsel. After that lawyer was granted leave to withdraw, Datto again elected to proceed pro se. Datto did not request appointed counsel any time thereafter, and he does not argue that the District Court should have appointed counsel in connection with the Rule 60(b) proceeding.

[4] In June 2009, Datto moved for a preliminary injunction, requesting that the District Court order Jefferson to reinstate him immediately to the M.D. program. The District Court scheduled an evidentiary hearing on that motion for January 2010, but due to scheduling issues, the parties' desire for prehearing discovery, and the need for supplemental briefing, the preliminary injunction hearing was rescheduled several times. Ultimately, the parties settled before a hearing was held.

not permitted to review Judge Hey's personal notes, and he did not have an opportunity to present testimony from other witnesses, including Judge Hey's law clerk and court reporter. A district court has discretion to set parameters on the conduct of proceedings, and this Court "will not interfere ... except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant." In re Fine Paper Antitrust Litig., 685 F.2d 810, 817 (3d Cir. 1982) (quotation marks omitted). Datto has made no showing of actual and substantial prejudice. He plainly had no entitlement to review Judge Hey's personal notes, and he has demonstrated no prejudice from failing to present the law clerk or court reporter. Our review of the record reveals no reversible error in the District Court's conduct of the evidentiary hearing.

III.

We have carefully considered Datto's remaining arguments, but we conclude that those arguments are without merit and warrant no separate discussion. We will affirm the District Court's order denying the Rule 60(b) motion. Datto's motion for reconsideration of the Clerk's order granting appellees' request to file a supplemental appendix is denied.